UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| DWIGHT JERECZEK and STANLEY ELLIOTT, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>MBIA INC; AMBAC FINANCIAL GROUP, INC.; AMBAC ASSURANCE CORPORATION; MBIA INSURANCE CORPORATION;  NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION;<br><br>                    Defendants. | Case No. _____<br><br><br>CLASS ACTION COMPLAINT<br><br><u>DEMAND FOR JURY TRIAL</u> |

**COMPLAINT**

Plaintiffs Dwight Jereczek and Stanley Elliot ("Plaintiffs"), on behalf of themselves and all others similarly situated, bring this Class Action Complaint against Defendants MBIA Insurance Corporation (together with MBA Inc, "MBIA")m Ambac Financial Group, Inc., Ambac Assurance Corporation (together with Ambac Financial Group, Inc., "Ambac"), , National Public Finance Guarantee Corporation, for breach of contract and unjust enrichment seeking monetary damages, disgorgement, a declaratory judgment, and injunctive relief. The allegations herein other than those concerning Plaintiffs are based on information and belief and investigation of counsel.

**PARTIES**

1. Plaintiff Dwight Jereczek is a resident of California. Plaintiff Jereczek held COFINA Bonds insured by Defendants during the Class Period.

2.  Plaintiff Stanley Elliott is a resident of Florida. Plaintiff Elliot held COFINA Bonds insured by Defendants during the Class Period.Defendant Ambac Financial Group, Inc. is a Delaware corporation with its principal place of business at One World Trade Center 41st Floor New York, NY 10007

3.  Defendant MBIA Inc  is a Connecticut corporation with a listed Registered Agent address C T Corporation System, 357 East Center Street, Ste. 2 J, Manchester, CT, 06040-4471, United States is a parent company of MBIA Insurance Corporation ( together"MBIA") and National Public Finance Guarantee Corporation.

4.  MBIA Insurance Corporation s a subsidiary of Defendant MBIA Inc with a place of business at 1 Manhattanville Rd #301, Purchase, NY 10577.

5.  Defendant Ambac Assurance Corporation is a Wisconsin corporation with its principal place of business at One World Trade Center 41st Floor New York, NY 10007 Defendant Ambac Assurance Corporation is a wholly owned subsidiary of Defendant Ambac Financial Group, Inc.

6.  Defendant Ambac Financial Group, Inc. has a principal place of business at One World Trade Center 41st Floor New York, NY 10007

7.  Defendant National Public Finance Guarantee Corporation ("National") is a New York corporation with its principal place of business at 1 Manhattanville Road Suite 310 Purchase, NY 10577  National Public Finance Guarantee Corporation ("National") i. National is a wholly owned subsidiary of MBIA Inc.

8.  The claims of Elliott and Jereczek are typical of the claims of all other members of  the insured COFINA Bondholders class as described in this Complaint, and they have agreed to act as

Representative Plaintiffs to assert the claims of all similarly situated members of the class of c
bondholders.

9.  The named Representative Plaintiffs bring this case as a class action under Rule 23 of Federal
    Rules of Civil Procedure on behalf of all persons and entities that owned COFINA bonds
    between October 19, 2018, and February 12, 2019. Each claim has a common basis with every
    other claim, namely Defendants executed identical policies in which they agreed to pay the
    trustee for the benefit of Holders a portion of the principal and interest in the obligation

## JURISDICTION

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332
    because there is diversity of citizenship between the parties and the amount in controversy
    exceeds the sum of $75,000.00, exclusive of interest and costs, .the aggregated claims of the
    individual class members must exceed the sum or value of $5,000,000, exclusive of interest
    and costs ands Defendant MBIA Inc is incorporated in Connecticut.

## STATEMENT OF FACTS

11.  Between 2007 and 2011 , the Puerto Rico Sales Tax Financing Corporation—commonly referred
    to by its Spanish acronym, COFINA, issued over $10 billion par of bonds The COFINA Bonds
    were issued with Official Statements (the "Bond Offerings"), which contained information about
    the bond offering's terms, the issuer and insurers obligations, and bondholders' rights and
    privileges.

12. The bond insurance was issued by Defendants or their predecessors through contracts that were
    offered as part of the bond offering, referred to as Policies, with each of the COFINA
    bondholders. The Policies served as guarantees of Defendants' obligations to pay COFINA

bondholders in the event of nonpayment for any reason default.  In other words, if COFINA failed to make its required payments in connection with the bonds, Defendants were required to stand in the shoes of COFINA and make the requisite principal and interest payments to bondholders. Defendants' obligations were noncancelable and irrevocable.

13. The guaranty of the bonds by Defendants, multinational financial institutions, made the purchase of the COFINA bonds a low risk bet for investors.

14. Plaintiffs and members of the Class purchased COFINA Bonds that were packaged with bond insurance.

15. The guaranty of the bonds by Defendants, multinational financial institutions, made the purchase of the COFINA bonds a low risk bet for investors.

16. Ambac and National's payment of scheduled principal and interest obligations for the benefit of bondholders in the event of COFINA's payment default.

17. In the event of a default the terms of the insurance prohibited thePlaintiffs from participating in any legal actions, settlements, or other legal processes regarding the bonds, these were to be explicitly left in the hand of the insurance companies who owned the plaintiffs utmost good faith.

18. The Ambac and National Policies are binding agreements that provide important financial protections to bondholders.

19.  The Official Statement, or offering document supplied with the Policies, defines certain terms within the Policies.

20.  Entity known today as Defendant MBIA Inc initially issued policies directly.

21. MBIA Inc then divided their activities between wholly-owned  subsidiaries National and  MBIA INSURANCE CORPORATION

22. The MBIA Policy provides that MBIA "unconditionally and irrevocably" guaranteed to owners (i.e., bondholders) the scheduled payment of principal of and interest on the MBIA Insured Bonds when due. Specifically, the MBIA Policy provides that MBIA guaranteed: (i) "the full and complete payment required to be made by or on behalf of the Issuer" (COFINA) to the Trustee (the Bank of New York) of "an amount equal to" the principal of and interest on the MBIA Insured Bonds "as such payments shall become due but shall not be so paid[,]" with an exception on the timing for an event of acceleration and (ii) "the reimbursement of any such payment which is subsequently recovered from any owner pursuant to a final judgment by a court of competent jurisdiction that such payment constitutes an avoidable preference to such owner within the meaning of any applicable bankruptcy law." The amounts referred to in (i) and (ii) are defined as "Insured Amounts" under the MBIA Policy.

23. Under the MBIA Policy, if the required payment of an Insured Amount was not made, on the due date of the payment or within one business day after receipt of notice of nonpayment (whichever was later), MBIA was required to "make a deposit funds, in an account with the U.S. Bank Trust National Association, in New York, New York, or its successor, sufficient for the payment of any such Insured Amounts which are then due."

24. "[I]n the event of an acceleration of the due date of such principal by reason of mandatory or optional redemption or acceleration resulting from default or otherwise, other than advancement of maturity pursuant to a mandatory sinking fund payment, the payments guaranteed hereby shall be made in such amounts and at such times as such payments of principal would have been due had there not been any such acceleration, unless the Insurer elects, in its sole discretion, to pay in whole or in part any principal due by reason of such acceleration)."

25. U.S. Bank Trust National Association was then required to disburse to bondholders or the Paying Agent payment of the Insured Amounts.

26. The MBIA Policy was "non-cancellable for any reason."

27. The Ambac Policy similarly set forth Ambac's obligation to pay the principal and interest on the Ambac bonds. Specifically, the Ambac Policy provides that Ambac "agrees to pay to The Bank of New York, as trustee or its successor (the 'Insurance Trustee'), for the benefit of the Holders [i.e. Ambac bondholders], that portion of the principal of and interest on the above-described obligations [i.e., the Ambac bonds] which shall become Due for Payment but shall be unpaid by reason of Nonpayment by the Obligor [COFINA]." "Due for Payment," when referring to principal, "is when the scheduled maturity date or mandatory redemption date for the application of a required sinking fund installment has been reached." It "does not refer to an earlier date on which payment is due by reason of call for redemption (other than by application of required sinking fund installments), acceleration or other advancement of maturity.

28. When referring to interest, "due for payment" means "when the scheduled date for payment of interest has been reached."

29. "Nonpayment" is defined to mean "the failure of the Obligor to have provided sufficient funds to the trustee or paying agent for payment in full of all principal of and interest on the Obligations which are Due for Payment."

30. Under the Ambac Policy, Ambac was required to "make such payments to the Insurance Trustee within one (1) business day following written notification to Ambac of Nonpayment." Then, "[u]pon a Holder's presentation and surrender to the Insurance Trustee of such unpaid Obligations or related coupons, uncanceled and in bearer form and free of any adverse claim, the Insurance Trustee will disburse to the Holder the amount of principal and interest which is then Due for Payment but is unpaid."

31. The Ambac Policy provides that it "is noncancelable."

32. In 2017, COFINA failed to honor it's defaulted obligations on its bond payments filed for Title III
restructuring protection to impair restructure its debt obligations under Title III of PROMESA.

33. Plan of Adjustment of COFINA bonds was confirmed on February _13 2019.

34. Defendants orchestrated a scheme to improperly use their advantaged role in the a Title III process
insert themselves into the bankruptcy process, creating new obligations through unilaterally
altered contracts with the insured classes of COFINA bondholders.  Plaintiffs were without
representation or having any input whatsoever (and specifically having no standing  per the
insurance contract terms (as all matters regarding restructuring were left to the insurance
companies to let the contracts)and subrogation agreement).

35.  COFINA insured bondholders unknowingly and with no reason to suspect they would have to
know they had had their contracted insurance rights and obligations of instruments negotiated as
part of the Bond Offering and insurance contract changed, resulting in insured bondholders
receiving less than what they contracted bargained in the insurance policies for.

36.  This change in contract terms between the insurance companies and the insured were not in any
way germane to the Title III process, as the insurance companies were third parties in the title III
process and the insured were not involved in the Title III proceedings.

37. The insurance companies were explicitly obliged to handle all matters in these processes for the
insurance companies stole benefit in return for the insured unconditionally offering to pay the full
obligation in cash as it was due or restructured).

38. The confirmation of the adjustment plan was the default and nonpayment event as defined in
Defendants' policy agreement

39. Defendants were then required to make payment under their respective policy terms within one
business day of receiving notice of the default or nonpayment.

40. Here, Plaintiffs and members of the Class were entitled to receive cash from Defendants in the event of default under the Policies.

41. Instead, Defendants' respective breaches of the Policies caused financial harm to Plaintiffs and members of the Class by unilaterally replacing their low risk, highly marketable insured bonds, for which Plaintiffs were entitled to receive cash from Defendants in the event of a default, with less valuable, riskier, and less marketable financial instruments that had varying yields.

42.  These instruments had  inferior yields and complex call provisions that placed plaintiffs at material financial risk, and complex and costly tax implications, and left much of the benefits in the hands of the defendants.


43.  The courts have previously  found that a bondholder had a beneficial interest in the enforcement of the contract and thus had the right to sue the guarantor for failure to pay, even if the obligation was not undertaken directly or primarily for the benefit of the bondholder  *Reconstruction Finance Corp. v. Bairstow,* 140 F.2d 353. Additionally, in  D*unham v. Omaha* & C. B. S. R. Co., 106 F.2d 1 & C. B. S. R. Co., it was established that the right of a bondholder to sue on a bond in default continues to exist as a legal incident of the promise.

44. Under the guise of a Plan of Adjustment (the "Plan"), incorrectly approved by the U.S. District Court for the District of Puerto Rico, Defendants would no longer pay COFINA bondholders the full amounts due and owing under the COFINA Bonds , but would pay, at the election of unwitting bondholders: (i) a reduced, accelerated cash payout (which was less than the value they were entitled to under the Policies); or (ii) trust certificates for trusts that were less valuable than the insured bonds they originally purchased. and worth less than the cash they should have contractually received.

45. Notice was provided, and if bondholders failed to respond to the notice, they were provided with the trust certificates.

46. However, bondholders had no ability to access and review the notice as they did not know of its existence.

47. Notice was improper as bondholders were barred from review and not given ample time to review it.

48. The insurance companies were contractually obligated to handle all matters in restructuring for their mutual benefit and per contract eliminated all input and involvement from Plaintiffs.

49. The unilateral deals Defendants devised benefited only themselves at the expense of Plaintiffs and members of the Class, who were given no opportunity to dispute them.

50. In violation of the rights of Plaintiffs and members of the Class under their agreements with Defendants, Defendants paid Plaintiffs and members of the Class less consideration than they bargained for under the Ambac and National Policies.

51. The insurers knowingly structured the settlement to impair insured bondholders.

52. The insurers excluded bondholders from having any ability to participate in negotiations.

53. Insurers then pressured bondholders into poor choices about their claims.

54. Insurers inserted themselves into the process not to represent the best outcomes for bondholders but to obtain a release and shed their obligation.

55. Insurers acted in bad faith.

56. Bad faith can manifest in several ways, including an unfounded refusal to pay policy proceeds, causing an unfounded delay in making payment, deceiving the insured, or exercising any unfair advantage to pressure an insured into a settlement of their claim *Villas at Winding Ridge v. State Farm Fire & Cas.* Co., 942 F.3d 824, Abstract & Title Guar. Co. v. Chi. Ins. Co., 489 F.3d 808.

57. Additionally, Insurers owed Plaintiffs the duty of utmost care.

58. Utmost good faith, also known as "uberrimae fidei," is a legal doctrine primarily applied in the context of insurance contracts, particularly marine insurance. This doctrine requires both parties to an insurance contract to act with the highest degree of honesty and to disclose all material facts that could affect the risk being insured. The insured must reveal any information that materially affects the risk, and failure to do so can render the contract voidable at the insurer's option  *New York Marine & Gen. Ins. Co. v. Cont'l Cement Co., LLC*, 761 F.3d 830, *Certain Underwriters at Lloyds v. Inlet Fisheries Inc., 518 F.3d 645, Fireman's Fund Ins. Co. v. Great Am. Ins. Co., 822 F.3d 620.*

## CLASS ACTION ALLEGATIONS

59. Plaintiffs brings this action for damages, restitution and injunctive relief on behalf of themselves and a class of similarly situated persons and entities pursuant to Federal Rules of Civil Procedure, Rule 23(a), (b)(2) and (b)(3), with the Class defined to include:

> All bondholders who held COFINA Bonds insured by Defendants during the Class Period.

60. The class definition specifically excludes the following persons or entities: (a) any Defendants named herein; (b) any of the Defendants' parent companies, subsidiaries, and affiliates; (c) any Defendants' officers, directors, management, employees, subsidiaries, affiliates or agents; (d) all governmental entities; (e) the judges and chambers staff in this case, as well as any members of their immediate families; and (f) all jurors assigned to this case.

61. Plaintiffs do not know the exact number of Class members, but estimate that there are thousands of members geographically dispersed throughout the United States, such that joinder of all Class members in the prosecution of this action is impracticable.

62. Plaintiffs' claims are typical of the claims of fellow Class members because Plaintiffs held Ambac and National insured COFINA bonds. Plaintiffs and all Class members were damaged in the same

manner by the same wrongful conduct of Defendants as alleged herein, and the relief sought herein is common to all members of the Class.

63. Numerous questions of law or fact common to the entire Class—including, but not limited to those identified below—arise from Defendants' unlawful conduct Whether Ambac breached the Ambac Policy;

      a.   Whether National breached the National Policy;

      b.   Whether Defendants' conduct caused the Plaintiffs and members of the Class to receive less than they bargained for under the Ambac and National Policies;

      c.   Whether Plaintiffs and the other members of the Class were injured by Defendants' conduct and, if so, the determination of the appropriate Class-wide measure of damages; and

      d.   Whether Plaintiff and other members of the Class are entitled to, among other things, a declaration, restitution and injunctive relief, and, if so, the nature and extent of such relief.

64. These and other questions of law and fact are common to the Class and predominate over any questions affecting the Class members individually.

65. Plaintiffs will fairly and adequately represent the interests of the Class because they held Ambac and National insured bonds during the Class Period and have no conflicts with any other members of the Class. Furthermore, Plaintiffs have retained sophisticated and competent counsel who are experienced in prosecuting class actions, as well as other complex litigation.

66. Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief appropriate with respect to the Class as a whole.

67. This class action is superior to other alternatives for the fair and efficient adjudication of this controversy. Prosecuting the claims pleaded herein as a class action will eliminate the possibility of repetitive litigation. There will be no material difficulty in the management of this action as a class action.

68. The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

## CLAIMS FOR RELIEF

### COUNT ONE
### Breach of Contract
### (Against Defendant Ambac)

69. Plaintiffs hereby repeat and incorporate by reference each preceding paragraph as though fully set forth herein.

70. The Ambac Policy is a valid and binding contract between Ambac and Ambac bondholders, including Plaintiffs and members of the Class.

71. Plaintiffs and members of the Class performed their duties under the Ambac Policy.

72. Ambac breached the Ambac Policy by unilaterally altering the terms without consent of Plaintiffs and members of the Class and failing to abide by and perform its duties under the Ambac Policy.

73. Additionally Defendants breached the implied covenant of good faith and fair dealing in their performance of contractual obligations.

74. Plaintiffs and members of the Class suffered damages as a direct result of Ambac's breach by receiving less than what they bargained for under the Ambac Policy.

75. Plaintiffs and members of the Class are entitled to damages, a declaration that Defendants' unilateral modification of its contractual obligations is void, injunctive relief, and attorneys' fees and costs.

## COUNT TWO
### Breach of Contract
### (Against Defendant National)

76. Plaintiffs hereby repeat and incorporate by reference paragraphs 1-67

77. The National Policies are valid and binding contracts between National and National bondholders, including Plaintiffs and members of the Class.

78. Plaintiffs and members of the Class performed their duties under the National Policies.

79. National breached the National Policies by unilaterally altering the terms without consent of Plaintiffs and members of the Class and failing to abide by and perform its duties under the National Policies.

80. Additionally Defendants breached the implied covenant of good faith and fair dealing in their performance of contractual obligations.

81. Plaintiffs and members of the Class suffered damages as a direct result of National's breach by receiving less than what they bargained for under the National Policies.

82. Plaintiffs and members of the Class are entitled to damages, a declaration that National's unilateral modification of its contractual obligations is void, injunctive relief, and attorneys' fees and costs.

## COUNT THREE
### Unjust Enrichment
### (In the Alternative)
### (Against Defendant Ambac)

83. Plaintiffs hereby repeat and incorporate by reference paragraph 1-67

84. Defendant Ambac financially benefited from its unlawful acts. Ambac did so at the expense of Plaintiff and members of the Class, who received less than they were legally entitled to receive from Ambac. Ambac did not pay Plaintiff and members of the Class for the benefit it received.

85. It is unjust and inequitable for Ambac to have enriched itself in this manner at the expense of Plaintiffs and members of the Class, and the circumstances are such that equity and good conscience require Ambac to make restitution to Plaintiff and members of the Class.

86. Ambac should be made to disgorge its ill-gotten gains to a constructive trust created for the benefit of Plaintiffs and members of the Class, from which Plaintiffs and members of the Class may obtain restitution.

87. By reason of the foregoing, Plaintiff and members of the Class are entitled to relief under the unjust enrichment law.

**COUNT FOUR**
**Unjust Enrichment**
**(In the Alternative)**
**(Against Defendant National)**

88. Plaintiffs hereby repeat and incorporate by reference paragraph 1-67.

89. Defendant National financially benefited from its unlawful acts. National did so at the expense of Plaintiff and members of the Class, who received less than they were legally entitled to receive from National. National did not pay Plaintiff and members of the Class for the benefit it received.

90. It is unjust and inequitable for National to have enriched itself in this manner at the expense of Plaintiffs and members of the Class, and the circumstances are such that equity and good conscience require National to make restitution to Plaintiff and members of the Class.

91. National should be made to disgorge its ill-gotten gains to a constructive trust created for the benefit of Plaintiffs and members of the Class, from which Plaintiffs and members of the Class may obtain restitution.

92. By reason of the foregoing, Plaintiff and members of the Class are entitled to relief under the unjust enrichment law.

**COUNT FIVE**

**( Bad Faith Refusal To Pay First-Party Benefits Under An Insurance Contract)**

93. Elements of a cause of action for bad faith refusal to pay first-party benefits under an insurance

contract  are : (1) the existence of a mutually binding contract of insurance between the plaintiff

and the defendant; (2) a refusal by the insurer to pay benefits due under the contract; (3) the

refusal resulting from the insurer's bad faith or unreasonable action in breach of an implied

covenant of good faith and fair dealing; and (4) causing damage to the insured  *Twin City Fire Ins.*

*Co. v. Colonial Life & Accident Ins. Co., 375 F.3d 1097*, Univ. Med. Assocs. of the Med. Univ. of

S.C. v. UNUMProvident Corp., 333 F. Supp. 2d 479, Mid-South Ins. Co. v. Doe, 274 F. Supp. 2d

94. Plaintiffs hereby repeat and incorporate by reference paragraph 1-68

95. The actions of Defendants were in bad faith.

96. The actions were in breach of the implied covenant of good faith and fair dealing.

97. These actions caused Plaintiffs damages

**COUNT SIX**
**Breach of Contract**
**(Against MBIA Defendants)**

98. Plaintiffs hereby repeat and incorporate by reference Paragraphs 1-68 fully set forth herein.

99. The National Policies are valid and binding contracts between MBIA Defendants and

bondholders, including Plaintiffs and members of the Class.

100.    As the different MBIA entities stem only from internal restructuring and organization within

MBIA Inc itself and the company and then its different wholly-owned subsidiaries sold the same

bonds at different times, the activities and obligations of these entities are discussed together as

"MBIA" collectively.

101.    Plaintiffs and members of the Class performed their duties under the MBIA Policies.

102.    MBIA breached the MBIAPolicies by unilaterally altering the terms without consent of

Plaintiffs and members of the Class and failing to abide by and perform its duties under the MBIA

Policies.

103.    Plaintiffs and members of the Class suffered damages as a direct result of MBIA breach by

receiving less than what they bargained for under the MBIA Policies.

104.    Plaintiffs and members of the Class are entitled to damages, a declaration that National's

unilateral modification of its contractual obligations is void, injunctive relief, and attorneys' fees

and costs.

**COUNT SEVEN**
**Unjust Enrichment**
**(In the Alternative)**
**(Against MBIA Defendants)**

105.    Plaintiffs hereby repeat and incorporate by reference each  Paragraphs 1-67

106.     As the existence and involvement of different MBIA entities stem only from internal

restructuring and organization within MBIA Inc itself. The company and  its different

wholly-owned subsidiaries sold the same bonds at different times, the activities and obligations of

these entities are discussed together as "MBIA" collectively.

107.    MBIA Defendants  financially benefited from its unlawful acts. Ambac did so at the expense

of Plaintiff and members of the Class, who received less than they were legally entitled to receive

from MBIA companies. MBIA Defendantsdid not pay Plaintiff and members of the Class for the

benefit it received.

108.    It is unjust and inequitable for MBIA Defendants to have enriched itself in this manner at the

expense of Plaintiffs and members of the Class, and the circumstances are such that equity and

good conscience require Ambac to make restitution to Plaintiff and members of the Class.

109.    MBIA Defendants should be made to disgorge its ill-gotten gains to a constructive trust

created for the benefit of Plaintiffs and members of the Class, from which Plaintiffs and members

of the Class may obtain restitution.

110.    By reason of the foregoing, Plaintiff and members of the Class are entitled to relief under the

unjust enrichment law

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Class, respectfully

request that this Court enter judgment on their behalf and on behalf of the Class defined herein, by

adjudging and decreeing that:

A.      This action may proceed as a class action, with Plaintiffs serving as the Class

Representatives and their counsel serving as Class Counsel;

B.      Defendants breached their contractual obligations;

C.      Plaintiffs and the Class have been injured as a result of Defendants' breaches;

D.      Plaintiffs and the Class are entitled to recover damages and that a judgment in favor

of Plaintiffs and the Class be entered against Defendants in an amount subject to

proof at trial;

E.      Plaintiffs and the Class are entitled to pre-judgment and post-judgment interest on

the damages awarded them, and that such interest be awarded at the highest legal

rate;

F.      Defendants are required to disgorge their profits earned as a result of their wrongful

conduct and order them to make restitution to Plaintiffs and members of the Class;

G.      Plaintiff and the Class are entitled to equitable relief suitable to remedy Defendants'

past and ongoing conduct, including:

    i.    A judicial determination declaring the rights of Plaintiffs and members of the Class, and the corresponding responsibilities of Defendants; and

    ii.    Issuance of a permanent injunction against Defendants and their parents, subsidiaries, affiliates, successors, transferees, assignees and the respective officers, directors, partners, agents, and employees thereof and all other persons acting or claiming to act on their behalf from violations of the law as alleged herein;

H.    Defendants are to be responsible financially for the costs and expenses of a Court-approved notice program through post and media designed to give immediate notification of this action and their rights to the Class members;

I.    Plaintiffs and members of the Class recover their costs of this suit, including reasonable attorneys' fees as provided by law; and

J.    Plaintiffs and members of the Class receive such other or further relief as may be just and proper.

### K. JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all claims asserted in this Complaint that are so triable.

Dated: February 12, 2025

    Respectfully submitted,

                        /s/ RALPH STRZALKOWSKI, ESQ
                        ct30234
                        NATION'S COUNSEL PLLC
                        rs@lawyeronwheels.org
                        352 262 9593
                        1500 K. Street NW
                        Suite 200

WASHINGTON, District of Columbia
20005


*Attorneys for Plaintiffs and the Proposed
Class*