**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

---------------------------------------------------------X
DWIGHT JERECZEK AND STANLEY  :
ELLIOTT, individually and on behalf of :
all others similarly situated, :
: Case No. 3:25-cv-00223-SFR
*Plaintiffs*, :
- v - :
:
MBIA INC.; AMBAC FINANCIAL :
GROUP, INC.; AMBAC ASSURANCE :
CORPORATION; MBIA INSURANCE :
CORPORATION; NATIONAL :
PUBLIC FINANCE GUARANTEE :
CORPORATION; :
:
*Defendants.* :
---------------------------------------------------------X

**NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION,
MBIA INC., AND MBIA INSURANCE CORPORATION'S REPLY IN
<u>FURTHER SUPPORT OF JOINDER TO AMBAC'S MOTION TO TRANSFER VENUE</u>**

# TABLE OF CONTENTS

                                                                                                                            **Page**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT ................................................................................................................................. 2

I.     Transfer to the Title III Court Is Mandatory under 48 U.S.C. § 2166(d)(3) ....................... 2

II.    The Title III Court Retains Continuing, Exclusive Jurisdiction under the Confirmation Order .............................................................................................................. 7

III.   Discretionary Transfer under 28 U.S.C. § 1404(a) Is Warranted ....................................... 7

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aruba Hotel Enters. N.V. v. Belfonti*,
   611 F. Supp. 2d 203 (D. Conn. 2009) ...................................................................................9

*Bonilla v. Smithfield Assocs. LLC*,
   No. 09 Civ. 1549, 2009 WL 4457304 (S.D.N.Y. Dec. 4, 2009) .............................................6

*Celotex Corp v. Edwards*,
   514 U.S. 300 (1995) ............................................................................................................2, 3

*In re Chateaugay Corp.*,
   213 B.R. 633 (S.D.N.Y. 1997) ................................................................................................3

*Congregants of Mosdos Chofetz Chaim Inc. v. Mosdos Chofetz Chaim Inc.*,
   No. 21-CV-05654 (PMH), 2021 U.S. Dist. LEXIS 224031 (S.D.N.Y. Nov. 17,
   2021) .......................................................................................................................................3

*Conn. Gen. Life Ins. Co. v. BioHealth Lab'ys, Inc.*,
   No. 3:19-CV-01324 (JCH), 2024 WL 2106837 (D. Conn. Mar. 1, 2024) ...............................9

*In re Cuyahoga Equip. Corp.*,
   980 F.2d 110 (2d Cir. 1992) ....................................................................................................3

*Devan Motors of Fairfield, Inc. v. Infiniti Div. of Nissan N. Am., Inc.*,
   579 F. Supp. 2d 294 ................................................................................................................9

*Puerto Rico v. Hernández-Montañez (In re Fin. Oversight & Mgmt. Bd. for P.R.)*,
   77 F.4th 49 (1st Cir. 2023) ......................................................................................................2

*Thomas v. Conn. Dep't of Corr.*,
   No. 3:14CV714 DJS, 2015 WL 3970833 (D. Conn. June 30, 2015) ......................................6

*Thurmand v. Univ. of Conn.*,
   No. 3:18-CV-1140 (JCH), 2019 WL 369279 (D. Conn. Jan. 30, 2019) ....................6, 7, 8, 9

*Yankovich v. Applus Techs., Inc.*,
   621 F. Supp. 3d 269 (D. Conn. 2022) .....................................................................................8

**Statutes**

28 U.S.C. § 1404(a) ..............................................................................................................1, 7, 10

48 U.S.C. § 2166(d)(3) ...............................................................................................................2, 6

Defendants National Public Finance Guarantee Corporation, MBIA Inc., and MBIA Insurance Corporation (collectively, the "**National Defendants**,"[1] and together with Ambac Financial Group Inc. and Ambac Assurance Corporation, the "**Defendants**") hereby submit this reply in further support of their partial joinder [ECF No. 43] (the "**Joinder**") to *Ambac Financial Group Inc. and Ambac Assurance Corporation's Motion to Dismiss the Amended Complaint or Transfer Venue* [ECF Nos. 42, 42-1] (the "**Transfer Motion**").[2]

## PRELIMINARY STATEMENT

The Defendants identified three independent bases to transfer this action to the Title III Court: (1) mandatory transfer under PROMESA, (2) the Title III Court's retention of continuing, exclusive jurisdiction under the plan Confirmation Order, and (3) discretionary transfer under 28 U.S.C. § 1404(a).[3] Plaintiffs offer a cursory, half-page response to the Transfer Motion and the Joinder, simply ignoring most of the arguments developed therein. The reason for Plaintiffs' non-response is obvious—they have no real response. And the few statements Plaintiffs do make regarding transfer are belied not only by controlling precedent, but also by their own allegations in the Amended Complaint and their other statements in opposition briefing. Indeed, in their most recent opposition brief, *Plaintiffs* now request transfer in the alternative.[4] Transfer is the appropriate outcome here.

---

[1] The National Defendants are referred to collectively here only for convenience, and this term shall not be construed as an admission that each usage herein is applicable to all such defendants, nor shall it be construed as admitting, implying, or supporting any particular relationship between such defendants. To be clear, MBIA Inc. is not a proper defendant and did not issue any of the policies in question, as explained in the National Defendants' *Memorandum of Law in Support of Their Motion to Dismiss the Amended Complaint* [ECF No. 51].

[2] Capitalized terms not otherwise defined herein shall have the same meaning as in the Joinder.

[3] *See* Transfer Motion at 27-32; *see also generally* Joinder.

[4] *See Memorandum in Opposition to National Defendants' Motion to Dismiss the Amended Complaint*, ECF No. 63, at 10 (July 25, 2025) (the "**Opposition to National MTD**") (advocating for transfer under §§ 1404 and 1406 if the Court determines it lacks jurisdiction over co-defendants).

**ARGUMENT**

I.  **Transfer to the Title III Court Is Mandatory under 48 U.S.C. § 2166(d)(3)**

The Defendants' briefs explained why transfer is mandated by Section 2166(d)(3) of PROMESA.[5] The sum total of Plaintiffs' response on this score is as follows: "Under 48 U.S.C. 2166(d)(3), transfer is mandatory only if the claims arise in **or relate to** a Title III proceeding. While Ambac argues that Plaintiffs' claims challenge the COFINA Plan, Plaintiffs assert independent contractual rights that do not require interpretation or enforcement of the Plan."[6] Plaintiffs' response perhaps attempts to address whether their claims "arise in" the Title III proceeding, but Plaintiffs completely fail to address that Section 2166(d)(3) *also* covers claims that merely "relate to" the Title III proceeding—a much broader scope.

The text of PROMESA is clear: district courts "***shall*** transfer any civil proceeding … ***related to*** a case under this subchapter, to the district court in which the case under this subchapter is pending." 48 U.S.C. § 2166(d)(3) (emphasis added). The First Circuit has interpreted this provision to be "quite broad," covering all proceedings that might "***potentially*** have ***some effect*** on the bankruptcy estate … or otherwise have an impact upon the handling and administration of the bankrupt estate"—which the Defendants have shown here. *Puerto Rico v. Hernández-Montañez (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 77 F.4th 49, 60 (1st Cir. 2023) (emphasis added) (citation omitted); *see also* Transfer Motion at 28; Joinder at 6-7.

Beyond PROMESA, it is likewise well-settled that the phrase "related to" must be construed broadly. *See, e.g.*, *Celotex Corp v. Edwards*, 514 U.S. 300, 308 (1995) (holding that

---

[5] *See* Transfer Motion at 27-29; Joinder at 6-8.

[6] *Plaintiffs' Opposition to Defendants' Ambac Assurance Corporation and Ambac Financial Group Inc. Motion to Dismiss*, ECF No. 57, at 14 (July 5, 2025) (the "**Opposition**" or "**Opp.**") (emphasis added); *see also* Opposition to National MTD at 17-18.

2

Chapter 11 bankruptcy jurisdiction is more broad than Chapter 7 jurisdiction and citing broad interpretations of "related to" by the Courts of Appeals). That broad construction has been applied to bankruptcy cases in the Second Circuit as well. *See, e.g.*, *In re Chateaugay Corp.*, 213 B.R. 633, 638 (S.D.N.Y. 1997) ("[R]elated to jurisdiction is broad … encompassing any proceedings that 'might have any "conceivable effect" on the bankruptcy estate.'" (citing *Celotex Corp.*, *supra*, and *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992)); *Congregants of Mosdos Chofetz Chaim Inc. v. Mosdos Chofetz Chaim Inc.*, No. 21-CV-05654 (PMH), 2021 U.S. Dist. LEXIS 224031, at *5-6 (S.D.N.Y. Nov. 17, 2021) (same).

This action undoubtedly "relates to" the COFINA Title III case for several reasons. ***First***, the gravamen of the Complaint is the Defendants' negotiation of, and resulting treatment of insured bondholders like Plaintiffs under, *the Title III Plan*. *See* Am. Compl. ¶¶ 39-44, 47, 52-54, 59-71, 83, 87, 100, 107, 113, 118, 124-125, 134, 139-140, 146, 149. The entire premise of Plaintiffs' claims is that the Defendants allegedly modified and impaired insured bondholders' rights through the Title III Plan. *See id.* Indeed, as Plaintiffs admit elsewhere in their Opposition, "Plaintiffs allege that Ambac failed to honor its obligations under the financial guaranty insurance policies *by altering the terms of coverage during the COFINA restructuring*." Opp. at 10 (emphasis added); *see also* Opposition to National MTD at 12. Without the COFINA Title III case and Plan, this action would not exist. They are obviously "related" within the meaning of that term as construed by courts.

For example, Plaintiffs allege that "*[u]nder the guise of a Plan of Adjustment …* Defendants would no longer pay COFINA bondholders the full amounts due" and would instead pay "a reduced, accelerated cash payout (which was less than the value they were entitled to under the Policies)" or "trust certificates … that were less valuable than the insured bonds they originally

3

purchased." Am. Compl. ¶ 59 (emphasis added). And they go on to say that the Plan "impair[ed] insured bondholders," *id.* ¶ 67, and that the instruments Plaintiffs received under the Plan "had inferior yields and complex call provisions." *Id.* ¶ 55. The Defendants raised this nexus between Plaintiffs' claims and the Title III case in the Transfer Motion (at 28-29) and Joinder (at 7-8), but Plaintiffs now fail to respond. *See* Opp. at 14; Opposition to National MTD at 17-18. Their silence speaks volumes.

***Second***, the COFINA Plan includes liability exculpations covering Ambac and National "for any act taken or omitted to be taken consistent with the Plan in connection with the formulation, preparation, dissemination, implementation, acceptance, confirmation or approval of the Plan, including, without limitation, in connection with the structure of the Trusts, commutation, the treatment of Senior COFINA Bond Claims (Ambac), the treatment of Junior COFINA Bond Claims (Assured), the National Election, the voting procedures, the election procedures, and any release of obligations under the applicable Insurance Policies." Plan § 30.7(b). Plaintiffs' claims—which, as discussed above, arise from the Plan's alleged modification of their rights, including through election and commutation procedures[7]—fall squarely within the scope of this exculpation provision. Thus, adjudication of Plaintiffs' claims will necessarily involve interpretation and enforcement of the Plan. Again, the Defendants specifically raised this nexus between Plaintiffs' claims and the Title III case in the Transfer Motion (at 29) and Joinder (at 7), but Plaintiffs fail to respond. *See* Opp. at 14; Opposition to National MTD at 17-18.

---

[7] Am. Compl. ¶¶ 59-60 ("Under the guise of a Plan of Adjustment (the 'Plan'), approved by the U.S. District Court for the District of Puerto Rico, Defendants would no longer pay COFINA bondholders the full amounts due and owing under the COFINA Bonds, but would pay, at the election of unwitting bondholders: (i) a reduced, accelerated cash payout (which was less than the value they were entitled to under the Policies); or (ii) trust certificates for trusts that were less valuable than the insured bonds they originally purchased and worth less than the cash they should have contractually received. The Court notified the bondholders of this development, and if bondholders failed to respond to the notice, they were provided with the trust certificates.").

4

***Third***, Plaintiffs' action also attacks other portions of the COFINA Plan, including the commutation option that it created and the trust certificates that were provided to certain insured bondholders. Assuming Plaintiffs' action succeeded (it should not), it could in turn disrupt Plan-authorized distributions or cause them to be rescinded, potentially invalidating the trusts, giving rise to indemnification or contribution claims, and upending other provisions carefully negotiated and approved by the Title III Court. These knock-on consequences of Plaintiffs' collateral attack on the COFINA Plan further confirm that this proceeding is "related to" the Title III case. Plaintiffs once more fail to even address, let alone rebut, this showing. *Compare* Transfer Motion at 28-29, Joinder at 8, *with* Opp. at 14, Opposition to National MTD at 17-18.

***Fourth***, Plaintiffs' claims also revolve around supposed misconduct by Defendants during the Title III proceedings. For example, Plaintiffs allege that "Defendants orchestrated a scheme to improperly use their advantaged role in the a [*sic*] Title III process insert [*sic*] themselves into the bankruptcy process, creating new obligations through unilaterally altered contracts with the insured classes of COFINA bondholders." Am. Compl. ¶ 40. Plaintiffs further allege that "[t]he insurers excluded bondholders from having any ability to participate in negotiations" and "structured the settlement to impair insured bondholders." *Id.* ¶¶ 67-68. And they say that "[t]he unilateral deals Defendants devised benefitted only themselves at the expense of Plaintiffs and members of the Class, who were given no opportunity to dispute them." *Id.* ¶ 65; *see also* Opp. at 11-12 (discussing such allegations in the context of unjust enrichment, bad faith refusal, and breach of the implied covenant of good faith and fair dealing claims). Plaintiffs' allegations of misconduct in the COFINA Title III case undoubtedly mean this action "relates to" that case.

***Finally***, Plaintiffs claim the notice provided in the Title III proceeding was inadequate. *See, e.g.*, Am. Compl. ¶¶ 61-62 ("However, many bondholders had no ability to access and review

the notice as they did not know of its existence. Notice was improper as bondholders were barred from review and not given ample time to review it."); *id.* at ¶ 41 ("COFINA insured bondholders unknowingly and with no reason to suspect they would have to know they had had their contracted insurance rights and obligations of instruments negotiated as part of the Bond Offering and insurance contract changed, resulting in insured bondholders receiving less than what they contracted bargained in the insurance policies for."). Plaintiffs heavily rely on this allegation in responding to the Defendants' *res judicata* argument. *See* Opp. at 3, 5; Opposition to National MTD at 4, 5, 17. Yet again, an attack on the Title III Court-sanctioned notice provided to insured bondholders clearly "relates to" COFINA's Title III Case.

This action is subject to mandatory transfer under Section 2166(d)(3) of PROMESA for multiple, independent reasons—*none of which* Plaintiffs address in their opposition briefs. Plaintiffs' repeated failure to address these arguments in two separate opposition briefs operates as a concession. *See Thurmand v. Univ. of Conn.*, No. 3:18-CV-1140 (JCH), 2019 WL 369279, at *3 (D. Conn. Jan. 30, 2019) ("Courts in this Circuit have presumed that plaintiffs have abandoned their claims when they do not oppose a motion to dismiss them.") (compiling cases); *see also Thomas v. Conn. Dep't of Corr.*, No. 3:14CV714 DJS, 2015 WL 3970833, at *3 (D. Conn. June 30, 2015) ("When a plaintiff's specific claim is attacked in a motion to dismiss, a plaintiff must rebut the defendant's argument against that claim or it shall be deemed abandoned."); *Bonilla v. Smithfield Assocs. LLC*, No. 09 Civ. 1549, 2009 WL 4457304, at *11 (S.D.N.Y. Dec. 4, 2009). Indeed, Plaintiffs' cursory discussion of transfer, coupled with their alternative *request* for transfer in their latest brief, show that there is no meaningful dispute here over the appropriateness of transfer.

6

## II. The Title III Court Retains Continuing, Exclusive Jurisdiction under the Confirmation Order

As the Defendants argued in the Transfer Motion and Joinder, this action must be transferred to the Title III Court for a second, independent reason: the Plan expressly provides that the Title III Court "shall retain and have ***exclusive jurisdiction***" to resolve "any cases … that may arise in connection with the consummation, interpretation or enforcement of the Plan," including any issues pertaining to "*any* contract, *instrument*, release or other agreement or document that is *entered into* or delivered *pursuant to the Plan*" or "*the validity of any actions taken by any Entity pursuant to or in furtherance of the Plan* or Confirmation Order." Plan § 29.1(g), (l) (emphases added). For the reasons discussed above and in the Transfer Motion (at 29-30) and Joinder (at 8-9), this action falls squarely within the scope of the Title III Court's continuing, exclusive jurisdiction under these provisions. Plaintiffs' opposition briefs entirely ignore this argument, too, and therefore concede the point. *See Thurmand*, 2019 WL 369279, at *3.

## III. Discretionary Transfer under 28 U.S.C. § 1404(a) Is Warranted

As the Defendants argued in the Transfer Motion (at 30-32) and Joinder (at 9-11), even if this action were not subject to mandatory transfer under PROMESA—which it is for the reasons discussed in those briefs and above—transfer to the Title III Court is also appropriate under 28 U.S.C. § 1404(a). The Defendants identified four reasons why discretionary transfer is warranted, which Plaintiffs once again fail to meaningfully address. *See* Opp. at 14; Opposition to National MTD at 17-18.

*First*, Plaintiffs are foreign to Connecticut and do not seek to enforce rights in their home state, and therefore the usual deference to a plaintiff's choice of forum does not apply here. *See* Transfer Motion at 32; Joinder at 9. Plaintiffs do not dispute this reality in their opposition briefs and instead just assert—without any legal support or explanation—that their choice of forum must

be given deference. *See* Opp. at 14; Opposition to National MTD at 17-18. That is incorrect for the reasons Defendants already explained, and Plaintiffs' non-response operates as a concession. *See Thurmand*, 2019 WL 369279, at *3.[8]

**Second**, PROMESA is a novel and complex statute applied almost exclusively in the Title III proceedings, so, at the district court level, Judge Swain has authored and/or implemented nearly all the controlling precedents. She also oversaw the particular Title III case that is the subject of this action. *See* Transfer Motion at 31; Joinder at 10-11. Plaintiffs simply respond that the claims here "involve standard contract and tort issues," and so transfer is not warranted. Opp. at 14; Opposition to National MTD at 18.

Plaintiffs' assertion is contrary to their own statements elsewhere in their opposition briefs. For example, Plaintiffs concede that the events forming the basis of their action occurred "against the backdrop of Puerto Rico hardships and restructuring of its debts, as well as the novel federal law PROMESA." Opp. at 2; *see also* Opposition to National MTD at 2. And they admit that the triggering event at issue in this insurance dispute "was the Commonwealth of Puerto Rico … failure [*sic*] to honor its obligations." *Id.* Indeed, the gravamen of this action is Plaintiffs' challenge to insured bondholders' treatment under the COFINA Plan, of which the Title III Court has specialized knowledge from adjudicating the case for years and ultimately confirming the Plan. *See* Am. Compl. ¶¶ 55, 59, 67; *see also supra* at 3-5. Plaintiffs also allege that the Defendants

---

[8] In their discussion of personal jurisdiction, Plaintiffs assert without support that "the proposed class will include Connecticut residents, as the alleged harm involves bonds purchased by residents of all 50 States." Opp. at 9; *see also* Opposition to National MTD at 9. To the extent Plaintiffs are attempting to argue that this unsupported assertion means their choice of forum is entitled to deference, they are wrong. If that were the standard, then named plaintiffs seeking to certify a nationwide class action could always bring suit in any of the fifty states—regardless of their own citizenship—based on the supposed citizenship of unnamed putative class members. That is obviously not the case. *See Yankovich v. Applus Techs., Inc.*, 621 F. Supp. 3d 269, 273 (D. Conn. 2022) ("A plaintiff has Article III standing when the plaintiff has '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.' In a class action, federal courts lack jurisdiction if no *named plaintiff* has standing." (emphasis added) (citations omitted)).

8

engaged in misconduct during the Title III proceedings, *see* Am. Compl. ¶¶ 40, 65, 67-68, which Plaintiffs concede is the basis of their unjust enrichment, bad faith refusal, and breach of the implied covenant of good faith and fair dealing claims. *See* Opp. at 11-12; Opposition to National MTD at 2, 12-14, 15-16. Only the Title III Court has firsthand familiarity with the alleged events. Likewise, Plaintiffs allege that the notice provided in the Title III proceeding was inadequate, *see* Am. Compl. ¶ 62, and only the Title III Court has firsthand familiarity with these notice procedures.

***Third***, transfer would avoid inconsistent rulings and ensure uniform interpretation and application of the COFINA Plan and Confirmation Order. *See* Transfer Motion at 31; Joinder at 10. Plaintiffs do not even attempt to address this argument in their Opposition (*see* Opp. at 14; Opposition to National MTD at 17-18), which operates as a concession. *See Thurmand*, 2019 WL 369279, at *3.

***Finally***, Connecticut law will not be relevant to this dispute, which favors a transfer. *See* Transfer Motion at 31; Joinder at 10. Plaintiffs' bare response is that "the contracts were not controlled by Puerto Rican law"—yet Plaintiffs do not attempt a choice of law analysis. Opp. at 14; Opposition to National MTD at 17-18. That is because Plaintiffs know that Connecticut law will not apply. Connecticut courts apply "the most significant relationship" test for contracts "[w]here there is no choice of law provision," as well as for unjust enrichment and breach of the implied covenant of good faith and fair dealing claims. *Aruba Hotel Enters. N.V. v. Belfonti*, 611 F. Supp. 2d 203, 208 (D. Conn. 2009) (applying "the most significant relationship" test to breach of contract claim); *Conn. Gen. Life Ins. Co. v. BioHealth Labs., Inc.*, No. 3:19-CV-01324 (JCH), 2024 WL 2106837, at *14-15 (D. Conn. Mar. 1, 2024) (applying "the most significant relationship" test to unjust enrichment claim); *Devan Motors of Fairfield, Inc. v. Infiniti Div. of*

9

*Nissan N. Am., Inc.*, 579 F. Supp. 2d 294, 311 n.12, 313 & n.13 (D. Conn. 2008) (applying the same test to a breach of the implied covenant of good faith and fair dealing claim). Connecticut has no relationship to the events or contracts underlying this action except that a single defendant is incorporated in the state. Nor do Plaintiffs plead any allegation connecting the events or contracts underlying this action to Connecticut.

For all these reasons and as explained in the Transfer Motion and Joinder, transfer to the Title III Court under 28 U.S.C. § 1404(a) is also warranted.

## **CONCLUSION**

For the reasons set forth above and as further explained in the Transfer Motion, the Joinder, and in the Ambac Defendants' concurrently filed reply brief, the Court should transfer this action to the Title III Court.

Dated: August 8, 2025

                                                       **WEIL, GOTSHAL & MANGES LLP**

By:    <u>*/s/ Robert Berezin*</u>
Robert Berezin (admitted *pro hac vice*)
Intisarul Islam (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Email: robert.berezin@weil.com
intisarul.islam@weil.com

Corey Brady (admitted *pro hac vice*)
1395 Brickell Avenue
Suite 1200, Miami, FL 33131
Telephone: (305) 577-3225
Facsimile: (305) 374-7159
Email: corey.brady@weil.com

*Attorneys for National Public Finance Guarantee Corporation, MBIA Inc., and MBIA Insurance Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that I filed this document electronically using the CM/ECF System, which will send notification of such filing to all parties of record in the captioned case. Parties may access this filing through the Court's CM/ECF System.

At New York, New York, the 8th day of August, 2025.

By: /s/ *Robert Berezin*
Robert Berezin*
*Admitted *pro hac vice*