# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

```
------------------------------------------------ X
DWIGHT JERECZEK AND STANLEY                      :
ELLIOTT, individually and on behalf of all       :
others similarly situated,                       :
                                                 :
                          Plaintiffs,            :   Case No. 3:25-cv-00223
             - v -                               :
MBIA INC., AMBAC FINANCIAL                       :
GROUP, INC., AMBAC ASSURANCE                     :
CORPORATION, MBIA INSURANCE                      :
CORPORATION, and NATIONAL                        :
PUBLIC FINANCE GUARANTEE                         :
CORPORATION,                                     :
                          Defendants.            :
                                                 :   August 8, 2025
                                                 :
------------------------------------------------ X
```

**AMBAC'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS
MOTION TO DISMISS THE AMENDED COMPLAINT OR TRANSFER VENUE**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .......................................................................................................................... 2

I.      Plaintiffs Cannot Escape the Preclusive Effect of the COFINA Confirmation Order........ 2

II.     The Opposition Fails to Establish Any Basis for Personal Jurisdiction Over Ambac........ 4

       A.      Connecticut Law Precludes These Claims by Out-of-State Plaintiffs. ................... 4

       B.      Plaintiffs Allege No Suit-Related Contacts. ............................................................ 5

III.     Plaintiffs' Attempt to Defend Their Claims Only Underscores Their Deficiencies. ........... 6

       A.      Plaintiffs' Contract Claim Fails Because They Do Not Allege a Breach. ............... 6

       B.      The Unjust Enrichment Claim Is Improperly Duplicative...................................... 7

       C.      The Bad-Faith Tort Claim Is a Legal Impossibility................................................ 7

       D.      The Implied Covenant Claim Contradicts the Express Terms of the Contract....... 8

IV.     Claims Against Parent Company AFG Are Based on Conclusory Labels, Not Facts........ 8

V.     If Any Claims Survive, They Belong Exclusively in the Title III Court. ........................... 9

       A.      Transfer is Mandatory Because Plaintiffs' Claims Strike at the Heart of the COFINA Plan................................................................................................. 9

       B.      In Any Event, Discretionary Transfer Serves the Interest of Justice.................... 10

CONCLUSION..................................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**                                       **Page(s)**

*In re BlockFi Inc.*,
   No. 22-19361, 2025 WL 2024312 (Bankr. D.N.J. July 18, 2025)..............4

*In re Chateaugay Corp.*,
   89 F.3d 942 (2d Cir. 1996)..............3

*Est. of Nunez-Polanco v. Boch Toyota, Inc.*,
   339 F. Supp. 2d 381 (D. Conn. 2004)..............4

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*,
   77 F.4th 49 (1st Cir. 2023)..............9

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011)..............5

*Lim v. Radish Media Inc.*,
   No. 22-1610, 2023 WL 2440160 (2d Cir. Mar. 10, 2023)..............6

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
   84 F.3d 560 (2d Cir. 1996)..............5

*Napoli-Bosse v. Gen. Motors LLC*,
   453 F. Supp. 3d 536 (D. Conn. 2020)..............4

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981)..............9

*Sikarevich Family L.P. v. Nationwide Mut. Ins. Co.*,
   30 F. Supp. 3d 166 (E.D.N.Y. 2014)..............7

*Wells Fargo Bank, N.A. v. Konover*,
   No. 3:05-CV-1924 CFD, 2011 WL 1225986 (D. Conn. Mar. 28, 2011)..............8

**Statutes**

11 U.S.C. § 101(5)(A)..............3

11 U.S.C. § 101(10)(A)..............3

11 U.S.C. § 509(a)..............3

48 U.S.C. § 2166(d)(3)..............9

Conn. Gen. Stat. § 33-929(f)..............4

Ambac respectfully submits this reply in support of *Ambac's Motion to Dismiss the Amended Complaint or Transfer Venue* [Dkt. Nos. 42, 42-1] (the "Motion" or "Mot.") and in response to *Plaintiffs' Opposition to Defendants' Ambac Assurance Corporation and Ambac Financial Group Inc. Motion to Dismiss* [Dkt. No. 57] (the "Opposition" or "Opp."). Unless otherwise defined herein, capitalized terms have the meanings ascribed to them in the Motion.

## PRELIMINARY STATEMENT

Plaintiffs' Opposition fails to clear two decisive hurdles that doom this lawsuit at the outset: a final judgment that disposes of their claims and Connecticut's unequivocal bar on out-of-state plaintiffs suing out-of-state defendants in its courts. An attempt to revive resolved disputes years later—and doing so in the entirely wrong jurisdiction—must fail.

*First*, Plaintiffs are undeniably creditors whose legal rights were resolved by the confirmed COFINA Plan. Plaintiffs' clever but misguided argument—that Ambac somehow took their creditor status away by making insurance payments—quickly unravels upon inspection. Subrogation allows Ambac to step into Plaintiffs' shoes, but only to the extent of amounts Ambac actually paid. Plaintiffs do not—because they cannot—allege that Ambac made *any* payments (let alone that it paid the bonds *in full*) before the COFINA Plan was even confirmed. In fact, Plaintiffs allege precisely the opposite: their alleged injury stems from Ambac's purported failure to make required payments (on bonds for which no payments from the underlying debtor, COFINA, were even due). Plaintiffs thus have trapped themselves in a logical vise: either Ambac did pay (meaning no damages exist) or Ambac did not pay (meaning Plaintiffs were still creditors, their claims extinguished by the confirmed Plan). They cannot have it both ways.

*Second*, the Opposition confirms that this Court lacks personal jurisdiction over Ambac. Connecticut law could not be clearer: out-of-state plaintiffs cannot use Connecticut courts to sue out-of-state defendants like Ambac. *See* Conn. Gen. Stat. § 33-929(f). Plaintiffs' Opposition is

silent on this dispositive statutory bar—an omission that speaks volumes. Even if they could leap that statutory hurdle, constitutional due process requires a direct link between the defendant, the forum, and the lawsuit itself. Plaintiffs offer only a grab-bag of stale and irrelevant contacts that have nothing to do with the COFINA bonds, the insurance policy, or the injuries they now allege.

*Third*, the complaint offers no viable substantive claim. The contract count is fatally vague; Plaintiffs refuse to tell the Court which path their bonds took under the Plan, let alone how either path breached the policy. The remaining claims fare no better. Unjust enrichment cannot lie where, as here, no one disputes the existence of an express contract. The bad-faith failure to pay tort is a legal impossibility for bonds that do not mature for decades. And the implied covenant claim tries to invent a right to involvement in the negotiations that the governing contract gives to Ambac.

Finally, if not dismissed, this case must be transferred. By their own admission, Plaintiffs' alleged injury flows from "a Plan of Adjustment . . . approved by the U.S. District Court for the District of Puerto Rico." (Am. Compl. ¶59.) They cannot use the Plan of Adjustment as the focal point of their claims, then pretend their claims are unrelated to it. Transfer to the Title III Court—the only forum with the exclusive jurisdiction and expertise to adjudicate this case—is mandatory.

## ARGUMENT

**I.    Plaintiffs Cannot Escape the Preclusive Effect of the COFINA Confirmation Order.**

None of Plaintiffs' three attempts to dodge *res judicata* withstands scrutiny.

Plaintiffs' first theory—that they were not "creditors," had no right to be heard in the bankruptcy, and thus were not bound by the Plan—fundamentally misunderstands subrogation. (Opp. 3.) Subrogation is not all or nothing. An insurer steps into a bondholder's shoes only "*to the extent of* [its] payment." 11 U.S.C. § 509(a) (emphasis added). While default gave Ambac voting control, unless and until Ambac paid the bonds in full, Plaintiffs retained their economic ownership in the unpaid balance, making them "creditors" with a "right to payment" from COFINA—as the

governing bond resolution and the Title III Court's approved Disclosure Statement both made clear.[1] *See In re Chateaugay Corp.*, 89 F.3d 942, 947 (2d Cir. 1996). Indeed, the fact that the Plan itself provided insured beneficial holders with an election as to the treatment of their bonds underscores that the Title III Court regarded them as creditors whose rights were being adjusted.

While Ambac held voting rights, bondholders indisputably had a right to object to their treatment. In fact, other insured bondholders in parallel Puerto Rico restructuring proceedings did so; they filed an objection to the Puerto Rico Highways and Transportation Authority plan on July 27, 2022, and were heard at the confirmation hearing. *See* D.P.R. Case No. 17-3283, Dkt. No. 21617; Case No. 17-3567, Dkt. No. 1301. These Plaintiffs, by contrast, simply slept on their rights.

Plaintiffs trap themselves in a logical vise. They do not allege Ambac paid their bonds before the Plan was confirmed (in fact, no payments were due); their whole case is instead that Ambac failed to make payments. (Am. Compl. ¶¶ 45-47.) But if their bonds were not paid in full, they remained COFINA creditors, and the confirmed Plan extinguished their claims. 11 U.S.C. §§ 101(5)(A), (10)(A). If their bonds *were* paid in full, they have no damages or standing. Plaintiffs' attempt to avoid creditor status (and *res judicata*) is thus a self-defeating proposition.

Plaintiffs' second argument, insufficient notice, is nowhere in their complaint. Plaintiffs now claim they were not "notified of what the Plan of Adjustment would do" (Opp. 5), but their complaint says the opposite: that "[t]he Court notified the bondholders." The complaint merely quibbles with the *manner* of notice, arguing some bondholders (not these Plaintiffs) were "not given ample time to review" it. (Am. Compl. ¶¶ 60-62.) Plaintiffs cannot amend their complaint

---

[1] *See* Ex. B to the First Supplemental Sales Tax Revenue Bond Resolution, "Defeasance" § (p) ("Special Provisions Relating to Bond Insurance Policies – Ambac Insurance Policy) (providing that Ambac is subrogated to the bondholders' rights "***in the event that the principal and/or interest due on the Ambac Insured Bonds shall be paid by Ambac Assurance***" pursuant to the policy) (emphasis added); Disclosure Statement at 32 [Dkt. No. 368, Case No. 17-03284] ("Under the Ambac Insurance Policy and the bond documents for the Ambac Insured Bonds, ***upon payment of the insurance benefits***, Ambac will become the owner of the Ambac Insured Bonds . . . and will be fully subrogated to the surrendering holder's rights to such payment").

through an opposition brief. *See Concannon v. LEGO Sys., Inc.*, No. 3:21-CV-01678 (JBA), 2023 WL 2526637, at *3 (D. Conn. Mar. 15, 2023) (factual allegations in briefs cannot be considered).

But even properly pled, the notice argument is a red herring. The standard is not whether every party internalized every detail, but whether notice was reasonably calculated to inform. The Title III Court already found the notice procedures sufficient. (Mot. 14-16.) That finding, embedded in the Title III Court's final judgment, is not subject to collateral review here.

Finally, Plaintiffs' appeal to *Harrington v. Purdue Pharma* is an improper collateral attack on a final judgment. *Purdue* is irrelevant here, because the release of Ambac was voluntary; bondholders could opt to keep their policy in effect rather than commute it. In any event, *Purdue* limits the use of third-party releases in *future* cases. It does not retroactively invalidate hundreds of judgments that became final years ago when lower courts permitted such releases. *See In re BlockFi Inc.*, No. 22-19361, 2025 WL 2024312, at *5 (Bankr. D.N.J. July 18, 2025) (rejecting a collateral attack based on *Purdue*). The law builds a fortress around final judgments. "Even subject-matter jurisdiction may not be attacked collaterally," *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 152 (2009) (cleaned up), and parties waive even objections to the bankruptcy court's constitutional authority if they are not raised. *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 679 (2015). If plaintiffs thought the Plan contained an impermissible third-party release, their remedy was to object or appeal six years ago, not file a new lawsuit in a different forum today.

**II.    The Opposition Fails to Establish Any Basis for Personal Jurisdiction Over Ambac.**

Plaintiffs' jurisdictional theory has two fatal flaws: they cannot overcome Connecticut's statutory bar on this lawsuit, and they cannot satisfy basic constitutional due process.

### A.    Connecticut Law Precludes These Claims by Out-of-State Plaintiffs.

The Opposition's silence on Ambac's main jurisdictional argument is deafening. Connecticut law is clear: out-of-state plaintiffs cannot sue out-of-state corporations in Connecticut;

only "a resident of this state or . . . a person having a usual place of business in this state" can. Conn. Gen. Stat. § 33-929(f). These California and Florida Plaintiffs do not qualify. This is not a close call or discretionary matter. It is a statutory command that strips this Court of jurisdiction. *Est. of Nunez-Polanco v. Boch Toyota, Inc.*, 339 F. Supp. 2d 381, 383 (D. Conn. 2004).

Plaintiffs' only response? Jurisdiction-by-association: because MBIA is in Connecticut, somehow this Court should hear claims against Ambac too. That's not how jurisdiction works.

Plaintiffs' fallback—that "the proposed class will include Connecticut residents" (Opp. 9)—is wishful thinking masquerading as legal argument. Personal jurisdiction in putative class actions is assessed based on the named plaintiffs' claims, not those of hypothetical future class members. *Napoli-Bosse v. Gen. Motors LLC*, 453 F. Supp. 3d 536, 541-42 (D. Conn. 2020). The imagined residency of unnamed, unidentified people who may or may not become members of a certified class cannot conjure jurisdiction where it does not otherwise exist.

Tellingly, Plaintiffs' cases are of no help to them. (Opp. 9.) One involved *Connecticut-based* plaintiffs, which these Plaintiffs decidedly are not. *See Doyle Grp. v. Alaskans for Cuddy*, 146 Conn. App. 341, 343 (2013). The other explicitly rejects the exact jurisdictional theory Plaintiffs advance, rejecting jurisdiction over an out-of-state defendant and dismissing the Wisconsin case plaintiffs rely on as unpersuasive. *Hersey v. Lonrho, Inc.*, 73 Conn. App. 78, 89 (2002) ("the court properly declined to . . . assert jurisdiction over the [out-of-state] defendant"); *id.* at 83 ("We do not find *Brunswick Corp.* [*v. Suzuki Motor Co., Ltd.*, 575 F. Supp. 1412 (E.D. Wis. 1983)] persuasive.").

### B. Plaintiffs Allege No Suit-Related Contacts.

Even if this case could overcome the statutory bar—it cannot—it would still violate the federal Due Process Clause. Plaintiffs do not dispute there is no general jurisdiction over Ambac in Connecticut, so they need specific jurisdiction. But specific jurisdiction does not exist anywhere

a company does business. It requires a direct "affiliation between the forum and the underlying controversy[.]" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

Plaintiffs offer a jurisdictional junk drawer: a 17-year-old subpoena from 2008, Ambac's inclusion on a list of insurers in this state, and a vague conspiracy theory. But the first two have nothing to do with COFINA bonds, the PROMESA restructuring, or Plaintiffs' alleged injuries. (For the record, Ambac is not writing any new business in Connecticut; it stopped selling new policies in 2008.) The third, conspiracy jurisdiction, requires specific overt acts in Connecticut in furtherance of the conspiracy. Plaintiffs offer nothing. The complaint does not mention a single Connecticut-based act related to the COFINA bonds, the insurance policy, the restructuring, or their injuries—let alone facts tying any such act to a conspiracy. Without allegations that the "suit aris[es] out of or [is] related to" contacts with Connecticut, there is no specific jurisdiction. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567-68 (2d Cir. 1996).

### III. Plaintiffs' Attempt to Defend Their Claims Only Underscores Their Deficiencies.

#### A. Plaintiffs' Contract Claim Fails Because They Do Not Allege a Breach.

Plaintiffs claim that determining whether Ambac breached involves "factual disputes that cannot be resolved at the motion to dismiss stage." (Opp. 10.) Nonsense. This is not a fact dispute; it's a pleading failure. Plaintiffs did not allege an actual breach. The Plan gave Plaintiffs a choice: (i) commute their policy in exchange for, *inter alia*, a lump-sum cash payment from Ambac, or (ii) keep the original insurance coverage via trust certificates with the same payment schedule as the original bonds. The complaint is silent as to which option Plaintiffs chose.

This Court is not required to solve a mystery the Plaintiffs themselves created. The only plausible inference here is that Plaintiffs commuted their policy, received newly issued Puerto Rico bonds, cash from COFINA, and additional cash consideration from Ambac in exchange for a full release—and now want a second bite at the apple years later. COFINA Docket, ECF No.

375-11 at 2. Even if Plaintiffs did not commute, bondholders who chose not to commute received the benefit of their original policy, which continues to cover the insured bonds transferred to the trust. Either way, Plaintiffs lose. Having failed to allege facts that would establish a breach under either option they were given, Plaintiffs' contract claim fails as a matter of law. *See Lim v. Radish Media, Inc.*, No. 22-1610, 2023 WL 2440160, at *2 (2d Cir. Mar. 10, 2023) (affirming dismissal where plaintiff "fails to provide factual allegations concerning the date or manner of breach").

### B.  The Unjust Enrichment Claim Is Improperly Duplicative.

Plaintiffs defend their unjust enrichment claim by arguing it is properly pleaded "in the alternative." (Opp. 11.) But pleading in the alternative is not a magic wand that resurrects legally deficient claims. Unjust enrichment can be pled in the alternative only where the validity or enforceability of the governing contract is genuinely disputed. Here, Plaintiffs do not challenge the validity of their policy; their lawsuit is an attempt to enforce it. When a valid, express contract governs the dispute, quasi-contractual unjust enrichment claims are barred. *See Sikarevich Family L.P. v. Nationwide Mut. Ins. Co.*, 30 F. Supp. 3d 166, 172 (E.D.N.Y. 2014).

Plaintiffs' fallback—that the claim survives against Ambac's parent because it was not a party to the contract—also fails. Unjust enrichment requires that the plaintiff conferred a *direct* benefit on the defendant. Even if some benefit trickled up to a parent company, that does not create a freestanding claim against the parent when an express contract governs. *Westbury Recycling, Inc. v. Westbury Transfer & Recycling, LLC*, 209 A.D.3d 929, 931-32 (N.Y. App. Div. 2022).

### C.  The Bad-Faith Tort Claim Is a Legal Impossibility.

Plaintiffs' attempt to shoehorn in a Connecticut "bad faith" tort claim fails for two reasons.

*First*, Plaintiffs ignore choice of law. Why would Connecticut law govern a case involving a Wisconsin insurer, California and Florida policyholders, and Puerto Rican bonds? The claim has no nexus to Connecticut, and Plaintiffs do not argue it is viable under any other applicable law.

- 7 -

*Second*, even if Connecticut law *did* apply (it does not), the tort requires a bad-faith *refusal to pay* benefits that are owed. Plaintiffs do not dispute that their bonds do not mature until 2046, with no payments due before then. (*See* Opp. 11.) An insurer cannot, in good faith or bad, "refuse to pay" a claim that is not yet due. Plaintiffs' vague claims of "self-serving conduct" during the restructuring do not state a claim within the narrow confines of this specific Connecticut tort.

### D. The Implied Covenant Claim Contradicts the Express Terms of the Contract.

Plaintiffs argue their implied covenant claim is different from breach of contract because it targets their "exclusion . . . from the COFINA negotiations." (Opp. 12.) But the implied covenant ensures parties get what they bargained for—not what they wish they had bargained for. It cannot rewrite a contract, create new rights, or contradict express terms. *Spencer-Smith v. Ehrlich*, 347 F.R.D. 606, 627 (S.D.N.Y. 2024). Nothing in the insurance policy gave Plaintiffs a personal seat at the bankruptcy negotiation table. In fact, the Title III Court found that monoline insurers like Ambac had the power to act on insured bondholders' behalf in bankruptcy. (D.P.R. Case No. 17-BK-3284-LTS, ECF No. 375.) Plaintiffs' attempt to use the implied covenant to conjure a contractual right that does not exist fails as a matter of law.

### IV. Claims Against Parent Company AFG Are Based on Conclusory Labels, Not Facts.

Plaintiffs' attempt to sue parent company Ambac Financial Group, Inc. ("AFG") relies on the drastic corporate law remedy of veil piercing. Plaintiffs argue this requires a "fact-intensive inquiry," but overlook that first they need to *plead* actual facts, not just conclusory assertions. *Leonard v. Gen. Motors LLC*, 504 F. Supp. 3d 73, 86 (D. Conn. 2020); *Schachter v. Sunrise Senior Living Mgmt.*, No. 3:18-CV-00953 (JAM), 2020 WL 1274601, at *6 (D. Conn. Mar. 16, 2020).

The only "facts" Plaintiffs muster here are that AFG issues consolidated financial statements and sometimes refers to the Ambac enterprise collectively. (Opp. 13.) That is it. This is not evidence of domination; it is what virtually every public holding company in America does.

It's like claiming a parent "dominates" its subsidiary because they share a logo or file a consolidated tax return. It falls miles short of the "complete domination" and disregard of the corporate form needed for the instrumentality rule. *See Wells Fargo Bank, N.A. v. Konover*, No. 3:05-CV-1924 CFD, 2011 WL 1225986, at *8 (D. Conn. Mar. 28, 2011) (providing central administrative support is "distinct from the domination or control of business policy and finances required under the instrumentality rule"). Because the complaint offers no facts to justify the extraordinary remedy of piercing the corporate veil, claims against AFG must be dismissed.

## V.  If Any Claims Survive, They Belong Exclusively in the Title III Court.

### A.  Transfer is Mandatory Because Plaintiffs' Claims Strike at the Heart of the COFINA Plan.

Plaintiffs insist that transfer is not mandatory because their case involves "independent contractual rights that do not require interpretation or enforcement of the Plan." (Opp. 14.) Their own complaint says otherwise. The core of their alleged injury occurred, in their own words, "[u]nder the guise of a Plan of Adjustment . . . approved by the U.S. District Court for the District of Puerto Rico." (Am. Compl. ¶ 59.) Their opposition brief lays bare that their case is, at bottom, a dispute over the Plan's meaning; Plaintiffs argue that the Title III Court's Findings and Conclusions of Law do not mean what they say. (Opp. 4.)

Plaintiffs cannot have it both ways. One cannot simultaneously claim that a court-approved Plan was the instrument of a breach of contract, dispute what the Plan means, and then insist that the lawsuit has nothing to do with the Plan. By framing this as a direct challenge to the COFINA Plan, Plaintiffs tacitly admit that their claims "aris[e] in or relate[] to" the Title III case. The First Circuit has made clear that PROMESA's "related to" jurisdiction is "quite broad," covering anything that could conceivably affect the bankruptcy estate or its administration. *In re Fin.*

*Oversight & Mgmt. Bd. for Puerto Rico*, 77 F.4th 49, 60 (1st Cir. 2023). This case falls squarely within that broad reach, making transfer mandatory under 48 U.S.C. § 2166(d)(3).

**B.      In Any Event, Discretionary Transfer Serves the Interest of Justice.**

Even if transfer were not mandatory, it is the only sensible path. Plaintiffs' choice of a Connecticut forum deserves no deference, as Plaintiffs have no connection to the state. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981). Plaintiffs do not dispute that Puerto Rico is the right forum if the Court transfers; they offer no alternative.

Moreover, any fact-finding or trial regarding claims that challenge the validity of the Plan would require this Court to wade into a novel, complex, and historic bankruptcy proceeding over which Judge Swain has presided for nearly a decade. The Title III Court's singular familiarity with the Plan, the parties, the governing law, and the notice procedures and settlement terms Plaintiffs now attack is essential to a just and consistent resolution on the merits of any challenge to the plan. Asking another court to intervene at this late stage is not just inefficient; it risks creating conflicting rulings that could destabilize a multi-billion-dollar reorganization. For instance, invalidating the Plan's third-party releases, as Plaintiffs request (Opp. 5), would threaten the finality that countless parties relied upon and invite a cascade of new litigation. The Plan itself anticipates this danger by reserving exclusive jurisdiction in the Title III Court for such challenges. For the convenience of the parties, and in the interest of judicial economy and consistent adjudication, any further proceedings in this case belong in Puerto Rico.

## CONCLUSION

This Court should dismiss the Amended Complaint with prejudice. If any part of this case survives, the Court should transfer it to the Title III Court in the District of Puerto Rico.

- 10 -

**FINN DIXON & HERLING LLP**

By: */s/ David R. Allen*
David R. Allen
6 Landmark Square
Stamford, CT 06901
Telephone: (203) 325-5000
Facsimile: (203) 325-5001
Email: dallen@fdh.com

**MILBANK LLP**

By: */s/ Atara Miller*
Atara Miller (*pro hac vice* pending)
John J. Hughes, III (*pro hac vice* pending)
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5000
Facsimile: (212) 530-5219
Email: amiller@milbank.com
         jhughes2@milbank.com

*Attorneys for Ambac Financial Group, Inc., and Ambac Assurance Corporation*