UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------------ x
DWIGHT JERECZEK and STANLEY ELLIOT,      :
                                          :
                    Plaintiffs,           :
                                          :
        v.                                :       25-CV-223 (SFR)
                                          :
MBIA INC., AMBAC FINANCIAL GROUP INC.,    :
AMBAC ASSURANCE CORPORATION, MBIA         :
INSURANCE CORPORATION, and NATIONAL       :
PUBLIC FINANCE GUARANTEE                  :
CORPORATION,                              :
                                          :
                    Defendants.           x
------------------------------------------------------------------

**MEMORANDUM & ORDER**

Plaintiffs Dwight Jereczek and Stanley Elliott bring a purported class action on behalf of the holders of Puerto Rican bonds against the insurers of those bonds. The Amended Complaint claims damages against five corporate entities: Ambac Financial Group, Inc., and Ambac Assurance Corporation (together "Ambac Defendants"), as well as MBIA Inc., MBIA Insurance Corporation, and National Public Finance Guarantee Corporation (together "National Defendants"). The Ambac and National Defendants moved to dismiss the Amended Complaint. For the reasons explained below, Defendants' motions to dismiss are granted with leave for Plaintiffs to replead the claims against MBIA Inc.

**I.   BACKGROUND**

Plaintiffs filed an Amended Class Action Complaint on May 6, 2025. Am. Compl., ECF No. 11. Jereczek is a resident of California. *Id.* ¶ 1. Elliot is a resident of Florida. *Id.* ¶ 2.[1]

---

[1] Although not raised by the parties, I note that the Amended Complaint does not include an allegation of the *citizenship* of the named Plaintiffs. As the Second Circuit has observed, "[a]n

The Amended Complaint alleges that MBIA Inc. is a Connecticut corporation. *Id.* ¶ 3. It states that the other named defendants are incorporated and have their principal places of business outside of Connecticut. *Id.* ¶¶ 4-11. The Amended Complaint clarifies that National Public Finance Guarantee Corporation and MBIA Insurance Corporation are subsidiaries of MBIA Inc. *Id.* ¶ 4.

The events in the Amended Complaint principally concern Defendants' actions as insurers of municipal bonds issued by public entities in Puerto Rico. In particular, the Amended Complaint states that from 2007 to 2011, the Puerto Rico Sales Tax Financing Corporation—which the Amended Complaint identifies using its Spanish acronym, "COFINA,"—issued more than $10 billion in municipal bonds. *Id.* ¶ 15. The COFINA bonds were insured by Defendants. *Id.* ¶ 16. Bondholders purchased insurance from Defendants at the same time they purchased COFINA-issued bonds. *Id.* ¶ 17. Pursuant to the insurance agreements, Defendants were obliged to pay bondholders in the event that COFINA defaulted on its obligations. *Id.* ¶ 16.[2] In the event of a default, Defendants were solely responsible for

---

individual's citizenship, within the meaning of the diversity statute, is determined by his domicile,' and residence or place of employment alone are 'insufficient to establish domicile for jurisdictional purposes.'" *Lue v. JPMorgan Chase & Co.*, No. 21-892, 2022 WL 1146219, at *1 (2d Cir. Apr. 19, 2022) (summary order) (quoting *Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 53-54 (2d Cir. 2019)). "Domicile is the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (internal quotation marks omitted). I assume Plaintiffs are citizens of California and Florida. If Plaintiffs wish to proceed in this action, they must file an Amended Complaint that includes information supporting a finding that they are citizens of their claimed states of residence.

[2] Although the Amended Complaint does not detail the precise scope of these obligations, it appears that Defendants insured bondholders against the risk that COFINA failed to pay its principal or interest obligations. Am. Compl. ¶ 19. The Amended Complaint does not allege that Defendants insured against the risk of nonpayment of bond premiums. *See id.*

any legal action against COFINA. *Id.* ¶ 20. The policy agreements prohibited bondholders from participating in any efforts to pursue legal action in the event of a default. *Id.*

"The bond issuer stopped payment on July 1, 2016." *Id.* ¶ 43. In the summer of 2016, Congress enacted the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. 2101 *et seq*. *Id.* ¶ 37. Title III of PROMESA created a "bankruptcy-like judicial . . . system." *Id.* Pursuant to Title III of PROMESA, a Plan of Adjustment for COFINA bonds was approved on February 13, 2019. *Id.* ¶ 39. According to the Amended Complaint, "Defendants orchestrated a scheme to improperly use their advantaged role in the Title III process." *Id.* ¶ 40. In particular, the Amended Complaint asserts that Defendants "unilaterally altered contracts with the insured classes of COFINA bondholders." *Id.* Because of the Plan of Adjustment, "Defendants would no longer pay COFINA bondholders the full amounts due and owing under the COFINA Bonds, but would pay, at the election of unwitting bondholders: (i) a reduced, accelerated cash payout (which was less than the value they were entitled to under the Policies); or (ii) trust certificates for trusts that were less valuable than the insured bonds they originally purchased[] and worth less than the cash they should have contractually received." *Id.* ¶ 59. The Amended Complaint states that many bondholders did not receive effective notice of the proposed Plan of Adjustment, which impaired the rights of bondholders to object to its terms. *Id.* ¶¶ 60-62. In sum, the Amended Complaint states that the Plan of Adjustment negotiated by Defendants came "at the expense of Plaintiffs and members of the Class, who were given no opportunity to dispute" the Plan. *Id.* ¶ 65.

The Amended Complaint brings eight claims. Count One is for breach of contract by Ambac. *Id.* ¶¶ 94-103. Count Two is for breach of contract by "National," a party I presume to be National Public Finance Guarantee Corporation. *Id.* ¶¶ 104-10. Count Three is for unjust

enrichment against Ambac. *Id.* ¶¶ 111-15. Count Four is for unjust enrichment against National. *Id.* ¶¶ 116-20. Count Five is for bad faith refusal to pay benefits owed under an insurance contract. *Id.* ¶¶ 121-29.[3] Count Six is for breach of contract by all MBIA Defendants (which I presume to refer to both MBIA Inc. and MBIA Insurance Corporation). *Id.* ¶¶ 130-36. Count Seven is for unjust enrichment against all MBIA Defendants. *Id.* ¶¶ 137-42. Count Eight is for breach of the covenant of good faith and fair dealing by Ambac. *Id.* ¶¶ 143-52.

The Ambac Defendants moved to dismiss or transfer on May 29, 2025. Ambac Mot. to Dismiss the Am. Compl. or Transf. Venue ("Ambac Defs.' Mem."), ECF No. 42-1. The National Defendants joined Ambac's Motion with respect to the Motion to Transfer Venue. Joinder of National to Ambac's Mot. to Transf. Venue ("National Defs.' Transfer Mem."), ECF No. 43. Plaintiffs responded in opposition on July 5, 2025. Pl.'s Opp. to Ambac Defs.' Mot. to Dismiss ("Pls.' Ambac Opp."), ECF No. 57. Ambac replied in support of its Motion on August 8, 2025. Ambac's Reply Mem. of L. in Further Supp. of its Mot. to Dismiss the Am. Compl. or Transf. Venue ("Ambac Defs.' Reply"), ECF No. 67. With leave of court, ECF No. 75, Plaintiffs filed a surreply to Ambac's Motion. Pls.' Surreply in Opp. to Defs.' Mot. to Dismiss ("Pls.' Ambac Surreply"), ECF No. 77.

The National Defendants filed a motion to dismiss on June 18, 2025. National Defs.' Mot. to Dismiss Am. Compl., ECF No. 50; National Defs.' Mem. of L. in Supp. of Mot. to Dismiss Am. Compl. ("National Defs.' Mem."), ECF No. 51. Plaintiffs responded in opposition on July 25, 2025. Pls.' Mem. in Opp. to National Defs.' Mot. to Dismiss ("Pls.' National Opp."), ECF No. 63. The National Defendants replied in support of their Motion on

---

[3] It appears that Count Six is brought against all Defendants.

4

August 14, 2025. National Defs.' Reply Br. in Supp. of Mot. to Dismiss ("National Defs.' Reply"), ECF No. 68.

Over Plaintiffs' opposition, I stayed discovery pending resolution of Defendants' motions. ECF No. 79.

## II.     LEGAL STANDARD

### A.     Rule 12(b)(2)

Where personal jurisdiction is contested through a Rule 12(b)(2) motion to dismiss, a plaintiff must "include an averment of facts that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the defendant." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (quoting *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996)). I consider, accepting as true all facts in the pleadings and the plaintiff's affidavits, whether the "factual allegations constitute a *prima facie* showing of jurisdiction." *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990). If an allegation is contested, doubts are resolved in favor of the plaintiff. *Okla. Firefighters Pension & Ret. Sys. v. Banco Santander (Mexico) S.A. Institución de Banca Multiple*, 92 F.4th 450, 456 (2d Cir. 2024). "Courts may consider materials outside the pleadings on a motion to dismiss for lack of personal jurisdiction without converting it into a summary judgment motion." *Johnson v. UBS AG*, 791 F. App'x 240, 241 (2d Cir. 2019).

### B.     Rule 12(b)(6)

To survive a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although this "plausibility" requirement is "not akin to a probability requirement," it "asks for more than

a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. I must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). However, I am not bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008).

## III.  DISCUSSION

Defendants submit three independent grounds for dismissal of the Amended Complaint. First, Defendants assert that the doctrine of *res judicata* requires dismissal with prejudice because the Plan of Adjustment for COFINA bonds addressed the issues or causes of actions raised in the Amended Complaint. Ambac Defs.' Mem. 15-26; National Defs.' Mem. 17-28.[4] Second, Defendants argue that four of the five defendants are not subject to personal jurisdiction in Connecticut, and that the remaining defendant (MBIA Inc.) is not liable for its subsidiaries' actions. Ambac Defs.' Mem. 26-27; National Defs.' Mem. 30-33. Third, Defendants argue that the Amended Complaint fails to state a claim, and that if any claims survive, the case should be transferred to the Title III court that approved the COFINA Plan of Adjustment. Ambac Defs.' Mem. 28-39; National Defs.' Transfer Mem. 7-12; National Defs.' Mem. 33-45.

As I explain, I agree that Plaintiffs have not satisfied the requirements for personal jurisdiction over Ambac Assurance Corporation, Ambac Financial Group, MBIA Insurance

---

[4] I cite throughout to the pagination set by ECF rather than any internal numbering system contained within the parties' briefing.

6

Corporation, and National Public Finance Guarantee Corporation. I further find that the claims against MBIA Inc. are subject to dismissal with leave to amend.[5]

### A.        Personal Jurisdiction Over Foreign Corporations

Because the Amended Complaint invokes the diversity jurisdiction of the federal courts, I consider first whether personal jurisdiction is authorized by Connecticut's long-arm statute before analyzing exercising personal jurisdiction comports with due process. *See Oklahoma Firefighters Pension & Ret. Sys. v. Banco Santander (Mexico) S.A. Institucion de Banca Multiple*, 92 F.4th 450, 456 (2d Cir. 2024).

"Courts may exercise two types of personal jurisdiction over a corporate defendant properly served with process: specific (also called 'case-linked') jurisdiction and general (or 'all purpose') jurisdiction." *Sociedad Concesionaria Metropolitana Du Salud S.A. v. Webuild S.P.A.*, No. 3:24-CV-02043 (SVN), 2026 WL 84524, at *4 (D. Conn. Jan. 12, 2026). "Specific jurisdiction is available when the cause of action sued upon arises out of the defendant's activities in a state. General jurisdiction, in contrast, permits a court to adjudicate any cause of action against the corporate defendant, wherever arising, and whoever the plaintiff." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016). General personal jurisdiction exists "only when a defendant is 'essentially at home' in the State." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (citation and internal quotation marks omitted). The Supreme Court has recognized that a corporation is usually subject to general personal jurisdiction in two forums: "its place of incorporation and principal place of business." *Id.*

---

[5] Because I dismiss Ambac Defendants for lack of personal jurisdiction, National Defendants' Motion to Join the Ambac Defendants' Motion to Transfer Venue, ECF No. 43, is moot. MBIA Inc. is free to renew any of its arguments regarding transfer (as well as any of the arguments regarding *res judicata*) if it moves to dismiss the Second Amended Complaint.

MBIA Inc. is subject to general personal jurisdiction in Connecticut because it is incorporated in this state. *See* Am. Compl. ¶ 4 (alleging that MBIA Inc. is a Connecticut corporation). In contrast, however, the Amended Complaint alleges that the other defendants are foreign corporations. *Id.* ¶¶ 3-11. The foreign corporations contend they are not subject to general or specific personal jurisdiction in Connecticut. Ambac Defs.' Mem. 26-27; National Defs.' Mem. 30-33.

Plaintiffs maintain that Defendants are subject to specific personal jurisdiction.[6] Plaintiffs argue that specific jurisdiction over Defendants is authorized by Conn. Gen. Stat. § 52-59b. Pls.' Ambac Opp. 11-13. But as Defendants note, this statute, which is captioned "Jurisdiction of courts over nonresident individuals, foreign partnerships and foreign voluntary associations," does not apply to corporations. *See, e.g.*, *Amerbelle Corp. v. Hommell,* 272 F. Supp. 2d 189, 195 (D. Conn. 2003) (rejecting proposition that § 52-59b authorizes personal jurisdiction over foreign corporations). Nor have Plaintiffs responded to Defendants' argument that the statutory provision applicable to corporations, Conn. Gen. Stat. § 33-929, does not authorize specific personal jurisdiction over claims by non-residents against foreign corporations.

---

[6] Plaintiffs do not respond to Defendants' contention that the foreign corporations are not subject to general personal jurisdiction in Connecticut. *See* Pls.' Ambac Opp. 11-15; Pls.' National Opp. 9-15. Therefore, Plaintiffs have forfeited any argument that this Court has general jurisdiction over these corporations. I thus have no occasion to analyze whether Defendants consented to general personal jurisdiction by complying with Connecticut's corporate registration statute, Conn. Gen. Stat. § 33-926, and appointing an agent for service of process, *id.* § 33-929(a). *See generally Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 636 (2d Cir. 2016) (holding that § 33-926 does not confer general personal jurisdiction over registered foreign corporations); *Sociedad Concesionaria Metropolitana Du Salud S.A. v. Webuild S.P.A.*, No. 3:24-CV-02043 (SVN), 2026 WL 84524, at *6 (D. Conn. Jan. 12, 2026) (concluding that *Brown* still controls despite the U.S. Supreme Court's recent decision in *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 134 (2023)).

Section 33-929 reads in pertinent part:

> Every foreign corporation shall be subject to suit in this state, *by a resident of this state or by a person having a usual place of business in this state*, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state; (2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state; (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers; or (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.

Conn. Gen. Stat. § 33-929(f) (emphasis added).

Connecticut state courts have consistently held that "§ 33-929(f) empowers only 'a resident of this state' or a 'person having a usual place of business in this state' to sue a foreign corporation in a Connecticut court." *Matthews v. SBA, Inc.*, 149 Conn. App. 513, 555 (2014); *see also Wilkinson v. Boats Unlimited, Inc.*, 236 Conn. 78, 87 (1996) (holding that prior version of long-arm statute, § 33-411(c), foreclosed personal jurisdiction of claims brought by non-resident plaintiffs against foreign corporation); *Brooks v. Galella*, No. FSTCV226055704S, 2023 WL 2133952, at *4 (Conn. Super. Ct. Feb. 17, 2023) (citing *Matthews* for the proposition that "§ 33-929(f) is . . . applicable to foreign corporations as defendants but only with respect to certain types of plaintiffs – plaintiffs who are Connecticut resident (or plaintiffs with a usual place of business in Connecticut)"); *Clark v. State Farm Mut. Auto. Ins. Co.*, No. FST CV21-6050604-S, 2022 WL 1049243, at *2 n.2 (Conn. Super. Ct. Feb. 16, 2022) (same).

9

Courts in this District have similarly held that § 33-929(f) does not authorize specific personal jurisdiction over claims brought by non-residents against foreign corporations. *Maxava LLC v. MacDonald*, No. 3:25-CV-848 (OAW), 2026 WL 115017, at *5 (D. Conn. Jan. 15, 2026); *Mossack Fonseca & Co., S.A. v. Netflix, Inc.*, No. 3:19-CV-1618 (JBA), 2019 WL 5298171, at *3 (D. Conn. Oct. 17, 2019); *Lexington Ins. Co. v. Rockwood Corp.*, No. 3:17-CV-017 (VLB), 2018 WL 7819245, at *2 (D. Conn. Jan. 24, 2018) ("Defendant is correct that a nonresident plaintiff who has no usual place of business in Connecticut may not establish personal jurisdiction over a foreign corporation."); *Anderson Trucking Serv., Inc. v. Eagle Underwriting Grp., Inc.*, No. 3:17-CV-00817 (CSH), 2018 WL 4039326, at *12 (D. Conn. Aug. 23, 2018) ("The Court is aware of no case supporting Anderson's contention that a foreign corporation with no 'usual *place* of business in this state' can avail itself of section 33-929(f) to establish personal jurisdiction over another foreign corporation."); *Austen v. Catterton Partners V, LP*, 729 F. Supp. 2d 548, 559-60 (D. Conn. 2010) ("In contrast, § 33-929(f) authorizes courts to exercise personal jurisdiction over a nonresident corporate defendant only when the plaintiff is 'a resident of this state or . . . a person having a usual place of business in this state.'"). This reading of Connecticut's long-arm statute for corporations also comports with the Second Circuit's discussion of the statute. *See Brown*, 814 F.3d at 634 (assuming, in dicta, that § 33-929(f) "limit[s] the ability of out-of-state plaintiffs to proceed against foreign corporations registered in Connecticut even with respect to certain listed matters bearing a connection to Connecticut").

Plaintiffs are not citizens or residents of Connecticut. Am. Compl. ¶¶ 1-2. Plaintiffs nonetheless argue that personal jurisdiction exists because this purported class action will eventually include Connecticut citizens. Pls.' Ambac Opp. 14. But as other courts have held:

10

"[P]ersonal jurisdiction is based on a defendant's contacts with the forum state and actions giving rise to the named plaintiffs' causes of action. Contacts with unnamed class members may not be used as a jurisdictional basis, especially before a class has been certified." *Vasquez v. Hong Kong & Shanghai Banking Corp., Ltd.*, 477 F. Supp. 3d 241, 255 (S.D.N.Y. 2020) (citation and internal quotation marks omitted); *see also Napoli-Bosse v. Gen. Motors LLC*, 453 F. Supp. 3d 536, 541-42 (D. Conn. 2020).

Plaintiffs also present a theory of jurisdiction-by-association: because, they say, the court has personal jurisdiction over MBIA Inc., the court may also exercise personal jurisdiction over Ambac and its subsidiaries as well as MBIA Inc.'s subsidiaries. Pls.' Ambac Opp. 11-12. But the Supreme Court has instructed that "[e]ach defendant's contacts with the forum State must be assessed individually." *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 n.13 (1984); *see also id.* (observing that "jurisdiction over a parent corporation [does not] automatically establish jurisdiction over a wholly owned subsidiary"). Thus, the mere fact that MBIA Inc. is subject to personal jurisdiction does not suffice to also subject the non-resident corporations to personal jurisdiction here.

Applying these settled principles, I conclude that Connecticut's long-arm statute does not authorize personal jurisdiction over the foreign corporations named in this action because Plaintiffs are not citizens of Connecticut and they do not allege they reside or do business in this forum. Because the long-arm statute does not authorize personal jurisdiction, I need not analyze whether exercising personal jurisdiction comports with due process.

Perhaps anticipating this outcome, Plaintiffs observe that 28 U.S.C. § 1404 authorizes transfer to a court that would have personal jurisdiction over Defendants. Pls.' Ambac Opp. 15. But Plaintiffs have not identified an alternative forum, and I decline to speculate into the

11

appropriate destination for this action. Accordingly, Plaintiffs' claims against Ambac Financial Group, Inc.; Ambac Assurance Corporation; MBIA Insurance Corporation; and National Public Finance Guarantee Corporation are dismissed for lack of personal jurisdiction.

### B. MBIA Inc.

As I have noted, MBIA Inc. is properly subject to general personal jurisdiction in Connecticut. Nonetheless, MBIA Inc. asserts that Plaintiffs' claims against it must be dismissed for failure to state a claim. In particular, MBIA Inc. argues that MBIA Inc. was not a party to the policy agreements Plaintiffs say have been breached and that I can take judicial notice of the fact that MBIA Inc. did not participate in the Plan of Adjustment Plaintiffs seek to challenge. National Defs.' Mem. 32-33. Plaintiffs do not respond to this argument. *See* Pls.' National Opp. 15-16. Indeed, although the Amended Complaint states that MBIA Inc. "initially issued policies directly," Am. Compl. ¶ 23, it does not allege that MBIA Inc. directly issued policies to Plaintiffs, *see id.* Moreover, the policies that Plaintiffs attach as exhibits to the Amended Complaint were issued by MBIA Insurance Corporation, not MBIA Inc. *See, e.g.*, Am. Compl. 32. Consequently, MBIA Inc. asserts that Plaintiffs can recover against MBIA Inc. only by piercing the corporate veil separating MBIA Inc. and its subsidiaries. National Defs.' Mem. 33. I agree.

"It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (citation and internal quotation marks omitted). Nonetheless, "there is an equally fundamental principle of corporate law, applicable to the parent-subsidiary relationship as well as generally, that the corporate veil may be pierced and the shareholder held liable for the corporation's conduct when, *inter alia*, the corporate form

12

would otherwise be misused to accomplish certain wrongful purposes, most notably fraud, on the shareholder's behalf." *Id.* at 62. "A parent corporation may also be held liable for the acts of its subsidiary when the subsidiary is merely an alter ego of the parent." *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 195 (2d Cir. 2010) (Leval, J., concurring in the judgment), *aff'd*, 569 U.S. 108 (2013). These general principles are firmly entrenched in Connecticut law. *See generally SFA Folio Collections, Inc. v. Bannon*, 217 Conn. 220, 230 (1991) ("It is undisputed that in Connecticut a court will disregard the corporate structure and pierce the corporate veil only under exceptional circumstances, for example, where the corporation is a mere shell, serving no legitimate purpose, and used primarily as an intermediary to perpetuate fraud or promote injustice.") (citation and internal quotation marks omitted).[7]

MBIA Inc. observes that the "Amended Complaint is completely bereft of any allegation" to support the inference that MBIA Inc. exercised such total domination over its subsidiary such that it is directly liable for the actions of the subsidiary.[8] National Defs.' Mem.

---

[7] The parties dispute whether Connecticut law applies to this dispute. *See* Am. Compl. ¶ 77 (stating that "Connecticut law recognizes a number of circumstances under which a parent company may be liable for the actions of its subsidiary, including the 'instrumentality rule'"); National Defs.' Mem. 34 (applying Puerto Rico and New York law); Pls.' National Opp. 16 (reiterating Plaintiffs' view "that this action is governed by Connecticut law"). I assume for purposes of this analysis that Connecticut law applies here.

[8] The Connecticut Supreme Court has articulated two different tests for when to pierce the corporate veil: the "instrumentality rule" and the "identity rule." *Naples v. Keystone Bldg. & Dev. Corp.*, 295 Conn. 214, 232 (2010). "The instrumentality rule requires, in any case but an express agency, proof of three elements: (1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of the plaintiff's legal rights; and (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of. The identity rule has been stated as follows: If the plaintiff can show that there was such a unity of interest and ownership that the independence of the corporations had in effect ceased or had never

13

33. Plaintiffs respond that MBIA Inc. previously sold COFINA bond insurance before engaging in a corporate restructuring in 2009. Pls.' National Opp. 15-16. Plaintiffs also contend that MBIA Inc. "fully controls the activities of its subsidiaries." *Id.* at 16. I decline to consider these facts raised in Plaintiffs' memorandum of law, however, because they are not alleged in the Amended Complaint. *See, e.g.*, *Ward v. Andrews McMeel Pub., LLC*, 963 F. Supp. 2d 222, 231 (S.D.N.Y. 2013) (stating that "new facts and allegations, first raised in a Plaintiff's opposition papers, may not be considered in deciding a motion to dismiss").

Furthermore, I agree that the well-pleaded facts in the Amended Complaint fail to support the inference that MBIA Inc. wholly controlled its subsidiaries or otherwise abused the corporate form. The Amended Complaint asserts that the related MBIA entities emerged from "internal restructuring and organization." Am. Compl. ¶ 132. The Amended Complaint also states that MBIA Inc. wholly owns National Public Finance Guarantee Corporation. *Id.* ¶ 10. But a corporate restructuring—which appears to have taken place well before the events in question here—does not support the inference that MBIA Inc. abused the corporate form. Nor does whole ownership, standing alone, suffice to make the parent corporation liable for the actions of its subsidiaries. *See, e.g.*, *Campisano v. Nardi*, 212 Conn. 282, 293-94 (1989) ("In the absence of a claim that the corporation was formed for an improper purpose, or that the plaintiffs were improperly induced to enter into a contract with the corporation, the mere breach of a corporate contract cannot of itself establish the basis for application of the

---

begun, an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise." *Patel v. Flexo Converters U.S.A., Inc.*, 309 Conn. 52, 59 n.7 (2013) (quoting *Naples*, 295 Conn. at 232).

instrumentality rule."). I therefore conclude that the Amended Complaint fails to state a claim against MBIA Inc.

Plaintiffs assert that any defects in the Amended Complaint can be remedied through repleading. Pls.' National Opp. 16. I will exercise my discretion to offer Plaintiffs leave to amend in an effort to state a claim against MBIA Inc.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' claims against Ambac Financial Group Inc., Ambac Assurance Corporation, MBIA Insurance Corporation, and National Public Finance Guarantee Corporation are dismissed for lack of personal jurisdiction. The Clerk is respectfully directed to terminate these defendants from the action.

Plaintiffs' claims against MBIA Inc. are dismissed for failure to state a claim with leave to file an amended complaint. If Plaintiffs seek to continue this action against MBIA Inc., they may file a Second Amended Complaint on or before March 6, 2026. The Second Amended Complaint, if filed, will be limited to the claims Plaintiffs wish to assert against MBIA Inc. If Plaintiffs amend the complaint and MBIA Inc. moves to dismiss the Second Amended Complaint, the stay of discovery will remain in effect pending resolution of that motion.

SO ORDERED.

New Haven, Connecticut
February 13, 2026

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge